**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| MATTHEW KANAPESKY | : | |
| 425 Creek Road | : | |
| Downingtown, PA 19335 | : | |
|       Plaintiff | : | |
|    vs. | : | |
| | : | |
| TOWNSHIP OF EAST BRANDYWINE | : | JURY TRIAL DEMANDED |
| 1214 Horseshoe Pike | : | |
| Downingtown, PA 19335 | : | |
| | : | |
| LUKE REVEN, | : | |
| In his Capacity as Manager | : | Civil Action No: |
| Township of East Brandywine | : | |
| 1214 Horseshoe Pike | : | |
| Downingtown, PA 19335 | : | |
| | : | |
| MARK D. KOSCI, | : | |
| In his Capacity as Chief of Police | : | |
| Township of East Brandywine | : | |
| Police Department | : | |
| 1214 Horseshoe Pike | : | |
| Downingtown, PA 19335 | : | |
| | : | |
| DANIEL ORRIS, | : | |
| In his Capacity as Former Detective | : | |
| Township of East Brandywine | : | |
| Police Department | : | |
| 1214 Horseshoe Pike | : | |
| Downingtown, PA 19335 | : | |
|       Defendants | : | |

---

**CIVIL ACTION-COMPLAINT**

Plaintiff, Matthew Kanapesky, by and through his counsel, John H. Kiefel, Esquire, files the following Complaint and Civil Action against the Defendants, and alleges the following:

**JURISDICTION AND VENUE**

1. This Honorable Court has jurisdiction of this civil action pursuant to 28 U.S.C. §§1331 and 1343(1), (3) and (4). The Court has supplemental jurisdiction to hear any related

1

state causes of action.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) since all of the acts described in this Complaint occurred in this District.

3.      This Court has supplemental jurisdiction over any state law claims implicated herein pursuant to 28 U.S.C. § 1367.

**PARTIES**

4.      Plaintiff, Matthew Kanapesky, is an adult resident of the Commonwealth of Pennsylvania, who resides at 425 Creek Road, Downingtown, East Brandywine Township, Chester County, Pennsylvania 19335. (Hereinafter referred to as the "Property").

5.      Defendant, Township of East Brandywine (Hereinafter referred to as "EBT"), is a Second-Class Township under the laws of the Commonwealth of Pennsylvania, with its offices located at 1214 Horseshoe Pike, Downingtown, Pennsylvania 19335.

6.      Defendant, Luke Reven (Hereinafter referred to as "Reven"), is an adult resident of the Commonwealth of Pennsylvania, who at all times relevant to this Complaint acted within the scope of his authority as EBT Township Manager, and EBT Assistant Township Manager. Reven's regular place of business is located at the EBT offices, which are at 1214 Horseshoe Pike, Downingtown, East Brandywine Township, Pennsylvania 19335.

7.      Defendant, Mark D. Kosci (Hereinafter referred to as "Kosci"), is an adult resident of the Commonwealth of Pennsylvania, who at all times relevant to this Complaint acted within the scope of his authority as EBT Chief of Police.  Kosci's regular place of business is located at the EBT offices, which are at 1214 Horseshoe Pike, Downingtown, East Brandywine Township, Pennsylvania 19335.

8.      Defendant, Daniel Orris (Hereinafter referred to as "Orris"), is an adult resident of the Commonwealth of Pennsylvania, who at all times relevant to this Complaint acted within the scope of his authority as an EBT Police Detective.  Upon information and belief, Orris' regular

place of business is now located at the Offices of the Detectives of the County of Chester, which is at 201 W. Market Street, West Chester, Pennsylvania 19382.

### FACTUAL BACKGROUND

9.      U.S. Const. Amend I states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or **abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and **to petition the Government for a redress of grievances**.

(Emphasis supplied).

10.      Section 27 of the Constitution for the Commonwealth of Pennsylvania states:

> The people have a right to clean air, **pure water**, and to the **preservation of the natural,** scenic, historic and **esthetic values of the environment**. Pennsylvania's public natural resources **are the common property of all the people**, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

(Emphasis supplied).

11.      Kanapesky's Property is located wholly within East Brandywine Township, Chester County, Pennsylvania.  A true and correct copy of Kanapesky's Deed to the Property is attached hereto as Exhibit "A" Pages 1-5.

12.      Kanapesky's Deed recites that his Property boundary extends "to a point in the approximate center line of the Creek …," which refers to the Brandywine Creek.

13.      The Brandywine Creek is a non-navigable waterway, and Kanapesky owns the private waters that flow over his Property.

14.      Kanapesky conspicuously displays "No Trespassing Signs" throughout the border areas of the Property, including at the Brandywine Creek.

3

15.     On or about January 15, 2010, an Easement Agreement between Kanapesky, as Grantor, and Hillendale Partners, L.P., as Grantee, concerning the Property, was recorded in the Chester County Recorder of Deeds at Book 7855, Page 1850.  A true and correct copy of the Easement Agreement, which is recorded in the Chester County Recorder of Deeds at Book 7855, Page 1850 is attached hereto, and incorporated herein, as Exhibit "B" Pages 6-14.

16.     The subject matter of the Easement Agreement is an underground waterline, which was to provide water to a residential housing project then known as the Hillendale Subdivision.

17.     The Hillendale Subdivision would later become known as the Dowlin Forge Station Project.

18.     Kanapesky has never disputed the existence of the Easement Agreement, which is recorded in the Chester County Recorder of Deeds at Book 7855, Page 1850.

19.     Kanapesky has never told a third party that he disputed the existence of the Easement Agreement, which is recorded in the Chester County Recorder of Deeds at Book 7855, Page 1850.

20.     The recorded Easement Plan for the Kanapesky property, which shows the location of the waterline easement in a darkened rectangular line, appears at Chester County Recorder of Deeds Record Book 7856, Page 1850, as follows:



21.     On or about January 24, 2017, Hillendale Partners, L.P. recorded an assignment of the Easement Agreement concerning the Property, to Aqua Pennsylvania, Inc. (Hereinafter "Aqua"), which is recorded in the Chester County Recorder of Deeds at Book 9500, Page 2349. A true and correct copy of the Assignment, which is recorded in the Chester County Recorder of Deeds at Book 9500, Page 2349 is attached hereto, and incorporated herein, as Exhibit "C," Pages 15-25.

22.     Kanapesky's Property is burdened by two (2) active permits issued by the Commonwealth of Pennsylvania Department of Environmental Protection (Hereinafter "DEP"), which are known as Permit Number GP051514316, and PAD150075.

23.     Permit Number PAD150075 concerns MDG Downingtown L.P.'s (MDG") Dowlin Forge Station Project.  Kanapesky's Property is contiguous to the open space portion of the Dowlin Forge Station Project.  Kanapesky's Property also has a physical elevation that is below the Dowlin Forge Station Project, and certain stormwater from that project flows directly towards and onto Kanapesky's Property.  A true and correct copy of the Permit Number PAD150075 is attached hereto, and incorporated herein, within Exhibit "D," Page 32.

24.     Permit Number GP051514316 is a Utility Line Stream Crossing that Aqua, MDG, and their subcontractors, used to conduct Horizontal Directional Drilling operations under Kanapesky's Property, at the Brandywine Creek, to install the waterline, which would serve the Dowlin Forge Station Project.  A true and correct copy of the Utility Line Stream Crossing Permit Number GP051514316 is also attached hereto, and incorporated herein, within Exhibit "D," Pages 26-32.

25.     In order to install new pipelines, a company must employ one of two methods: trenching or tunneling.  The tunneling method is usually used in more heavily populated areas, as it can cross a road or a waterway underground without disturbing the surface.  The tunnels are constructed by drilling underground in a horizontal direction, which is most commonly accomplished by a process known as horizontal directional drilling (Hereinafter "HDD").  HDD employs high pressure fluids that help to cut through the rock.  True and correct copies of the

pictures of the HDD operations conducted at Kanapesky's Property are attached hereto, and incorporated herein, as part of Exhibit "E, Pages 33-65.

26.     HDD drilling fluid is often composed of water and bentonite clay as well as other additives that the drilling company determines are necessary.  The pressures used are so high that they can fracture rock, and therefore must be closely monitored.  Fluid can enter a small fracture and blow that fracture open and continue to follow that fracture for as long as it can, like a pressure relief valve.  The result is a "loss of returns" or "loss of circulation."  Instead of returning to the hole's entrance to be treated and reused, the fluid disappears into the formation through fractures or voids in the rock that are naturally occurring.  The fluid can also travel through underground water and ultimately end up in drinking supplies.  Because of the potential impacts to lands and waters of the Commonwealth, these incidents have to be reported to the DEP pursuant to general regulations and the specific permits that authorize a drilling project.

27.     Kanapesky's Property is serviced by an on-site well for water, which was damaged during Aqua, MDG, and their subcontractors' HDD operations.  Specifically, the well water became discolored, and the household appliances that utilized the well water were all rendered useless and had to be replaced. See Exhibit "E, Pages 33-65.

28.     No records appear to exist within the DEP as to the composition of the drilling fluid utilized in the HDD operations at Kanapesky's Property, or as to the difficulties encountered by Aqua, MDG, and their subcontractors, in its HDD operations, which upon information and belief, included the loss of drilling fluid and cuttings onto the surface of Kanapesky's Property, the loss of drilling fluid and cuttings into underground soil and rock fractures at Kanapesky's Property, the flow of drilling fluid and cuttings into the underground aquifer at Kanapesky's Property, and the loss of a large HDD drill bit under the Brandywine Creek.  See Exhibit "E, Pages 64-65.

29.     In addition, Aqua, MDG, and their subcontractors did not test Kanapesky's well water before, during, or after their HDD operations at Kanapesky's Property, and no water testing records appear within the DEP's records concerning the operations at Kanapesky's Property. See Exhibit "E, at Pages 64-65.

6

30.    In the early part of April 2017, Kanapesky contemporaneously exercised his First Amendment protected speech rights concerning his Property by expressing concerns to EBT about the lack of erosion and sedimentation controls being employed by the waterline contractors at the commencement of operations, and the resulting potential negative impact on the Brandywine Creek.  True and correct copies of the pictures of the lack of erosion and sedimentation control at Kanapesky's Property at the commencement of the HDD operations are attached hereto, and incorporated herein, as Exhibit "E, Pages 34-36.

31.    The existence and timing of Kanapesky's concerns about erosion and sedimentation controls was later misrepresented in a public meeting on June 7, 2018, by EBT's now dismissed Township Manager, Scott Piersol.  Specifically, Kanapesky continued to dispute the EBT Township Manager, Scott Piersol's, mischaracterization of his erosion and sedimentation control complaints concerning the waterline work performed at his Property, and the fact that Joe Sonfranko, not Jim Demchak was the proper Resource Conservationist for the Chester County Soil Conservation District, who should have been handling the matters concerning Kanapesky's Property.

32.    Kanapesky also exercised his First Amendment protected speech rights concerning his Property, the MDG development project, and engaged in protected speech concerning the environmentally sensitive public water supply at the Brandywine Creek, as well as speaking on governmental matters concerning EBT, on the following timeline:

  a.    4/19/2018 Kanapesky at Board of Supervisors RE: Creek;

  b.    4/26/2018 Kanapesky-Cedarville Email RE: Creek;

  c.    5/17/2018 Kanapesky at Board of Supervisors RE: Sedimentation & Erosion Controls;

  d.    5/22-23/2018 Piersol-Demchak Emails RE: Sedimentation & Erosion Controls Complaints;

  e.    6/7/2018 Kanapesky at Board of Supervisors RE: Easement;

  f.    6/8/2018 Township-Kanapesky Letter RE: Issues List;

g.      6/21/2018 Kanapesky at Board of Supervisors RE: Issues List;

h.      6/27/2018 Township-Kanapesky Letter RE: Right to Know Request;

i.      7/16/2018 Kanapesky-Township Letter RE: Demands to Township;

j.      7/19/2018 Kanapesky at Board of Supervisors RE: Fence/Floodplain;

k.      8/2/2018 Kanapesky at Board of Supervisors RE: Other Matters;

l.      8/3/2018 Kanapesky at DEP RE: Records Review;

m.      8/16/2018 Kanapesky at Board of Supervisors RE: Other Matters; and

n.      9/20/2018 Kanapesky at Board of Supervisors RE: Other Matters.

True and correct copies of the meeting minutes and correspondence from the aforementioned First Amendment protected speech are attached hereto, and incorporated herein, as Exhibit "F," Pages 66-119.

33.    After being advised by East Brandywine Township officials that it was proper to contact the DEP with questions concerning erosion and sedimentation control, Kanapesky reviewed records at the Norristown DEP Office on August 3, 2018, with no incident.  True and correct copies of the meeting scheduling documents, and follow-up are attached hereto, and incorporated herein, as Exhibit "G," Pages 120-125.

34.    Kanapesky's August 3, 2018, records review at the Norristown DEP Office, was scheduled by a Third Party, Margie Swart, and Ms. Swart witnessed that the records review occurred with no incident.

35.    August 3, 2018, is the only time that Kanapesky has ever been inside the Norristown DEP Office.

36.    On May 1, 2019, employees of the DEP made false unsworn statements to the East Brandywine Township Police, as memorialized within Incident Report Number 19-30-129721.  Specifically, the false unsworn statements include the following:

8

On 05/01/2019 at approximately 0930 hours I, Det Orris was on duty when Abdel Nassani responded to station to rnake a harassment report.  Nassani is a Senior Civil Engineer with the PA Department of Environmental Protection (OEP).  He was accompanied to station by DEP Investigator Thomas Buterbaugh and DEP Assistant Counsel William Gerlach.  Chief Kocsi and Lt Yankanich were also present for this report.  Nassani wished to report harassment by Matthew Kanapesky.  Nassani came into contact with Kanapesky pursuant to his employment with DEP. Nassani advised that in January of 2019, Matthew Kanapesky appeared at the Norristown DEP Office unannounced and demanded to meet with someone regarding his dispute with Metropolitan Development Group, Kanapesky presented Nassani with several documents including a deed and survey maps. Based on the plan he was shown, Nassani advised it initially appeared as though someone was encroaching on Kanapesky's land.  Nassani stated he explicitly asked Kanapesky if there was an easement or if he was monetarily compensated for the use of his land.  Kanapesky explicitly told Nassani there was no easement, nor was he compensated monitarily (sic).

Nassani began to investigate Kanapesky's claims.  He learned Kanapesky had in fact granted an easement and been paid for same.  He further noted reviewing copies of checks paid to Kanapesky by Metropolitan Development Group for the use of his land. Nassani stated he opted to "let it die" rather than calling or emailing Kanapesky with the outcome.  Nassani stated he did not want to confront Kanapesky with the fact that Kanapesky lied. Nassani explained his unease with Kanapesky, noting that several times during the initial meeting Kanapesky would stand up and get very animated.

A true and correct copy of Incident Report Number 19-30-129721 is incorporated herein, as part of Exhibit "H" at Pages 127-129.

37.    The statements presented to the East Brandywine Police within Incident Report Number 19-30-129721 by DEP Investigator, Thomas Buterbaugh, DEP Assistant Counsel, William Gerlach, and DEP Senior Civil Engineer, Abdel Nassani, which are recited in Paragraph 36, above, are all materially false.  Here, Kanapesky was never present, in person, at the Norristown Office of the DEP during January of 2019, he never denied the existence of the Easement Agreement with Hillendale Partners, LP, and he never received any checks from

Metropolitan Development Group.  Rather, the initial Easement Agreement payment was received in 2010 from ARL Properties, Inc., a Jack Loew controlled entity, who holds no ownership interest in Metropolitan Development Group.  See e.g. Exhibit "B" Pages 6-14; Exhibit "H" at Pages 132-134.

38.     In that regard, DEP's Senior Engineer, Abdel Nassani, subsequently admitted to the alleged unsworn falsifications, which are recited in Paragraph 37 above, within an Affidavit dated December 1, 2022.  Here, the December 1, 2022, Affidavit of the DEP's Abdel Nassani, which is a Supplemental Statement to EBT Police Incident Report Number 19-30-129721, states under oath: "Upon reflection, I now recognize that I may have been mistaken in asserting that Mr. Kanapesky had personally visited the Regional Office in January of 2019 and made harassing statements towards me."  See e.g. Exhibit "H" Pages 133-134.

39.     In May of 2019, and immediately after becoming aware of Incident Report Number 19-30-129721, Kanapesky rebutted that Incident Report and asserted the statements contained within that Incident Report were materially false. See e.g. Exhibit "H" Page 132.

40.     Here, instead of engaging in a further investigation in 2019, the EBT Police Department, by and through Chief Mark D. Kosci, and Detective Daniel Orris, accepted, as true, the statements made the DEP representatives in Incident Report Number 19-30-129721 and published them to third parties, including other members of the East Brandywine Police Department, and the East Brandywine Township Administration.

41.     The May 1, 2019, unsworn false statements contained in Incident Report Number 19-30-129721 were published by then EBT Police Detective Orris, who asserted them as true, as a witness in the civil case known as MDG Downingtown LP vs. Kanapesky, CCP Berks Co. Civil Action No: 2019-13767 (Hereinafter the "Berks County Civil Action").  See e.g. Exhibit "H" Pages 135-142.

42.     Specifically, EBT Police Detective Orris, as a custodian of records, testified and provided the sole information to the Trial Court, in the Berks County Civil Action, concerning the DEP's alleged involvement with Kanapesky, which was introduced into the record of the

10

October 31, 2019, Preliminary Injunction Hearing, as part of Exhibit P-19.  See e.g. Exhibit "H"
Pages 135-142.

43.     In addition, despite the existence of the HDD drilling issues at the Kanapesky
Property alleged herein Paragraphs 22-35, above, and the fact on or about November 6, 2018, the
DEP had issued a Notice of Violation "for violations of the required inspection and pumping
frequencies in July, August and September" at the Dowlin Forge Station Project, at the October
31, 2019, Preliminary Injunction Hearing, EBT Township Manager, Scott Piersol testified:

> Q And when you made these investigations, have you found any
> violations on the part of Metropolitan?
>
> A No.
>
> Q Have you, Metropolitan, have been cited in any way?
>
> A. No.

See e.g. Exhibit "I" Pages 147-148.

44.     At that time, Kanapesky was not represented by legal counsel in the Berks County
Civil Action.

45.     On December 5, 2019, a preliminary injunction, and December 6, 2019, opinion,
were issued by the Trial Court that, on their face, both improperly restricted Kanapesky's ability
to exercise his freedom of expression rights.  A true and correct copy of December 5, 2019, a
preliminary injunction, and December 6, 2019, opinion, are incorporated herein, as part of
Exhibit "J" Pages 149-154.

46.     Despite not being a party to the Berks County Civil Action, and in exchange for
Detective Orris' and Township Manager Piersol's testimony, EBT was a beneficiary of the
December 5, 2019, a preliminary injunction, and December 6, 2019, opinion.  Here, EBT
improperly gained the benefit of a judicially enforced silence of Kanapesky's first amendment
rights concerning anything involving the Dowlin Forge Station Project and East Brandywine
Township, as well as anything that happened on Kanapesky's Property concerning the Easement

waterline HDD operations.

47.      Subsequently, Kanapesky hired the undersigned as his legal counsel.  On October 25, 2021, in the Berks County Civil Action, Kanapesky's legal counsel filed a Motion to Dissolve or Amend the December 5, 2019, a preliminary injunction pursuant to Pa. R.C.P. 1531(f) (Hereinafter "Motion to Dissolve").

48.      The Motion to Dissolve was filed because the December 5, 2019, preliminary injunction, and December 6, 2019, opinion, issued by the Trial Court, on their face, both improperly restricted Kanapesky's ability to exercise his freedom of expression rights.  However, the Trial Court did not conduct a final hearing as to the preliminary injunction, within three (3) days, as mandated by Pa. R.C.P. 1531(f), and as demanded within Kanapesky's Motion to Dissolve.

49.      As a result of the Trial Court's failure to conduct the Pa. R.C.P. 1531(f) hearing, the December 5, 2019, preliminary injunction was dissolved.  See e.g. SD of Pittsburgh v. Pittsburgh Fed., 406 A.2d 324, 486 Pa. 365 (1979).  Accordingly, the enforced silence of Kanapesky enjoyed by EBT from December 5, 2019, finally came to an end on October 28, 2021.

50.      The parties in the Berks County Civil Action then proceeded to litigate the Pa. R.C.P. 1531(f) hearing issue to a conclusion within the Superior Court of Pennsylvania at Docket Number 44 MDA 2022, and the Supreme Court of Pennsylvania at Docket Number 623 MAL 2022.  In that regard, the Pennsylvania Supreme Court proceedings concluded on September 5, 2023.

51.      During the pendency of the Berks County Civil Action appellate proceedings, on November 4, 2022, Kanapesky's attorney sent a letter to EBT, which among other issues, demanded a re-investigation of the false Incident Report Number 19-30-129721, and raised the issue of the failure of the EBT Police to timely respond, and undertake the appropriate action, as to calls, complaints, and allegations of criminal activity reported by Kanapesky.  The November 4, 2022, letter specifically lists the following failures of EBT:

The failure to timely acknowledge citizen objections to the release of N.P.D.E.S. Permit #PAD150075, which is scheduled to expire on or about April 23, 2023.

The failure to properly investigate citizen complaints related to N.P.D.E.S. Permit #PAD150075.

The failure to enforce the permit conditions set forth in N.P.D.E.S. Permit #PAD150075.

The failure to enforce the Permittee(s) and Co-Permittee(s) agreements for N.P.D.E.S. Permit #PAD150075.

The failure to investigate, inspect and enforce the Pennsylvania Clean Streams Law at 35 P.S. §691.1, et seq., as it pertains to N.P.D.E.S. Permit #PAD150075.

The failure to investigate, inspect and enforce the Pennsylvania Clean Streams Law, specifically as to 35 P.S. §691.401 (Continuing obligation to refrain from the discharge of any substance resulting in pollution into any of the waters of the Commonwealth).

**<u>The failure to open and re-investigate the May 1, 2019, East Brandywine Township Police Incident Report Number 19-30-129721, which contains certain allegations leveled at Mr. Kanapesky by Pennsylvania Department of Environmental Protection ("Pa DEP") personnel, which PADEP now admits were false, as well as the failure to take the appropriate action as a result of becoming aware of the false allegations.</u>**

The failure to coordinate a survey of Mr. Kanapesky's real property located at 425 Creek Road, East Brandywine Township, Pennsylvania [UPI# 30-3-82.1], the bordering Township's real property known as UPI# 30-3-82, as well as the other bordering properties [UPI#s 30-3-86; 33-3-4.43; 33-3-0 (Orphan Brandywine Creek Property)], at no cost or expense to Mr. Kanapesky.

The undertaking of multiple, improper, and profiled inspections of the property located at 425 Creek Road, Downingtown, PA 19335, which were performed by East Brandywine Township's agents, and coordinated with other governmental agencies.

The failure to provide indemnification to Mr. Kanapesky in the case of MDG Downingtown, LP v. Matthew Kanapesky, CCP Chest. Co. Civil Action No: 2020-00965-RC.

13

The failure(s) to act in accordance with the requirements of the Pennsylvania Right to Know Law.

**The failure of the East Brandywine Police to timely respond, and undertake the appropriate action, as to calls, complaints, and allegations of criminal activity reported by Mr. Kanapesky.**

The failure to reimburse Mr. Kanapesky for the costs incurred in a County of Chester Assessment Appeal, concerning Mr. Kanapesky's real property located at 425 Creek Road, East Brandywine Township, Pennsylvania [UPI 30-3-82.1], which arises out of the incorrect parcel size assessed [3.2 acres assessed versus 2.2 acres actual].

(Emphasis supplied).  A true and correct copy of November 4, 2022, letter is attached hereto and incorporated herein, as Exhibit "K" Pages 155-158.

52.     Here, among the EBT Police Department's failures to timely respond, and undertake the appropriate action, as to calls, complaints, and allegations of criminal activity reported, was a May 15, 2022, incident where fishermen were present on Kanapesky's Property, and Kanapesky called 911 for assistance because he was injured in this interaction.  In that regard, EBT Chief Kosci admitted that EBT Police were not dispatched, and instead the matter was referred to Uwchlan Township, despite the incident occurring on Kanapesky's East Brandywine Township Property.  A true and correct copy of the May 18, 2022, correspondence concerning the incident is attached hereto and incorporated herein, as Exhibit "L" Pages 159-161.

53.     Next, on November 15, 2022, and November 28, 2022, Kanapesky made truthful complaints to the DEP concerning Permit PAD150075, which concerned uncontrolled stormwater run-off, sedimentation, debris, and trash at the Dowlin Forge Station Project.  See e.g. Exhibit "M" Pages 162-201.

54.     On January 3, 2023, the DEP thanked Kanapesky for the November 15, 2022, and November 28, 2022, complaints, and confirmed the truth of the matters reported by acting to

14

rectify the matters reported.  See e.g. Exhibit "M" Pages 162-201.

55.     On November 15, 2022, Kanapesky also became aware of a second natural gas line being breached by a contractor within the Dowlin Forge Station Project, and truthfully complained to governmental entities about this immediate, potentially catastrophic event.  See e.g. Exhibit "M" Pages 162-201.

56.     In that regard, the subject natural gas line breached within the Dowlin Forge Station Project, at the address of 371 Dawson Place, is only a short distance from the Buckeye Pipeline, which transmits large quantities of hazardous liquids and traverses the Dowlin Forge Station Project.  See e.g. Exhibit "M" Page 162.

57.     Kanapesky's residence and the easement for the waterline under Kanapesky's Property that services the Dowlin Forge Station Project, are both less than 1000 feet away from the Buckeye Pipeline.  See e.g. Exhibit "M" Page 162.

58.     Following the events alleged at Paragraphs 53-57 above, the EBT Police received the December 1, 2022, Affidavit of the DEP's Abdel Nassani, which states under oath: "Upon reflection, I now recognize that I may have been mistaken in asserting that Mr. Kanapesky had personally visited the Regional Office in January of 2019 and made harassing statements towards me." (Emphasis original).  See e.g. Exhibit "H" Pages 133-134.

59.     After receiving the December 1, 2022, Affidavit, the EBT Police took no action against the DEP for the false statements made and took no action to correct the record in Berks County Civil Action, or Detective Orris' testimony in the Berks County Civil Action.

60.     Against the backdrop of the receipt of the November 4, 2022, letter from Kanapesky's legal counsel, the receipt of the December 1, 2022, Nassani Affidavit, and seeking to return to the "good old days" of Kanapesky's enforced silence via the December 5, 2019, preliminary injunction in the Berks County Civil Action, as well as to specifically penalize Kanapesky for exercising his First Amendment rights by making truthful governmental complaints concerning Permit PAD150075 and the second natural gas line breached within the Dowlin Forge Station Project, on or about December 7, 2022, the EBT Police instituted

15

"lawfare" criminal trespass charges against Kanapesky. See e.g. Exhibit "M" Pages 163-168.

61. The criminal trespass charges instituted against Kanapesky were filed by EBT Police Detective Orris, who specifically cited Kanapesky's presence to view the events, and communications of truthful matters that Kanapesky personally viewed, as the alleged basis for the charges. See e.g. Exhibit "M" Pages 163-168.

62. This is the same EBT Police Detective Orris, who as a custodian of records, provided the sole information to the Trial Court concerning the DEP's involvement with Kanapesky in the Berks County Civil Action, specifically relying upon Incident Report Number 19-30-129721, which now had been repudiated by Abdel Nassani's December 1, 2022, Affidavit.

63. On February 7, 2023, a Summary Trial was conducted on the criminal trespass charges against Kanapesky. Kanapesky was found guilty of the charges and assessed a nominal fine by the Honorable Ann Feldman of Magisterial District Court 15-4-02. See e.g. Exhibit "M" Pages 163-168.

64. During the February 7, 2023, Summary Trial proceedings EBT Police Detective Orris, argued that the roads within the Dowlin Forge Station Project were "private roads," as they allegedly were not dedicated to EBT, and as a result Kanapesky was a trespasser.

65. Upon information and belief, and despite the motoring public routinely accessing the roads within the Dowlin Forge Station Project for many years, the alleged "private roads," still have not been dedicated to EBT by way of a filing within the Recorder of Deeds of Chester County referencing "Dowlin Forge Station" as a Grantor, and EBT as a Grantee.

66. Also, during the February 7, 2023, Summary Trial proceedings EBT Police Detective Orris published Kanapesky's Social Security Number within the EBT Exhibits offered.

67. February 7, 2023, Summary Trial, and all actions related thereto, were specifically calculated by EBT to inflict prior restraint, and censorship, of Kanapesky's First Amendment protected rights.

16

68.    Apparently unsatisfied with the results of the February 7, 2023, Summary Trial, by and through Police Chief Kosci and Township Manager, Luke Reven's use of the Township Solicitor, EBT next employed a two-tiered system where Kanapesky was disenfranchised from using EBT's public administrative services, and EBT's public safety services, without specifically employing legal counsel to handle those dealings directly with EBT.  Here, all other residents within East Brandywine Township, other than Kanapesky, presently hold ready access to all of EBT's public administrative services, and EBT's public safety services, without the need for employing and paying legal counsel to gain access to those EBT's services.

69.    These actions of EBT, by and through Police Chief Kosci and Township Manager, Luke Reven's use of the Township Solicitor, are specifically calculated by EBT to inflict a continuing prior restraint, and censorship, of Kanapesky's First Amendment protected rights, and on an ongoing basis seek to prevent him from petitioning the government for the redress of his grievances.

70.    The existence of the two-tiered system was confirmed within the Email exchanges between the Township Solicitor, and Kanapesky's legal counsel from May 9, 2023, through May 18, 2023, where Kanapesky and the undersigned legal counsel were denied access to EBT governmental services on May 1, 2023, which concerned stormwater management issues.  A true and correct copy of the May 9, 2023, through May 18, 2023, Emails are attached hereto and incorporated herein, as Exhibit "N" Pages 202-207.

71.    The existence of the two-tiered system for Kanapesky has now emboldened the entire EBT Police Department in its relations with Kanapesky.  Here, there are routinely occurring traffic accidents at the "Dead Man's Curve" on State Route 282 at the front of Kanapesky's Property.

72.    Upon information and belief, the responding EBT Police Officer informed Fling's Towing driver at a June 5, 2023, accident clean-up, where vehicle fluids leaked onto Kanapesky's Property, to be careful because "Matt makes up issues."  Upon information and belief, the statement "Matt makes up issues" was then relayed to an Insurance Adjuster for the Cincinnati Insurance Companies.  In addition, no mention of the fluid issue is noted within the

17

Crash Report for the June 5, 2023, accident.  A true and correct copy of a June 5, 2023, Crash Report is attached hereto and incorporated herein, as Exhibit "O" Pages 208-211.

73.     Again, at a December 15, 2023, auto accident clean-up, the responding EBT Police Officer was aware that a broken wheel drum had likely entered Kanapesky's Property from the subject vehicle, and neglected to enter that information in the Crash Report.  A true and correct copy of a December 15, 2023, Crash Report is attached hereto and incorporated herein, as Exhibit "P" Pages 212-215.

74.     On March 20, 2024, two (2) trespassers parked their vehicle, and smoked cigars, at an interior location on Kanapesky's Property.  The two (2) trespassers next made verbal threats towards Kanapesky mentioning a shotgun and shooting Kanapesky.  The responding EBT Police Officer to Kanapesky's 911 call questioned, and searched the two (2) trespassers, but allowed them to voluntarily leave with no further action being taken.  A true and correct copy of a March 20, 2024, Incident Report is attached hereto and incorporated herein, as Exhibit "Q" Pages 216-218.

75.     On March 30, 2024, one (1) trespasser fished on Kanapesky's Property, and after being given a warning to leave by Kanapesky, refused to do so.  The responding EBT Police Officer questioned the trespasser and allowed the trespasser to remain.  No trespass citation was issued despite the fact that the Brandywine Creek is a non-navigable waterway, and Kanapesky owns the private waters that flow over his Property where the trespasser was fishing.  A true and correct copy of a March 30, 2024, Incident Report is attached hereto and incorporated herein, as Exhibit "R" Pages 219-222.

76.     As a result of the March 20, 2024, and March 30, 2024, incidents, Kanapesky contacted the EBT Administrative Offices, and requested to be placed on the Agenda of the May 16, 2024, Meeting of the Board of Supervisors to discuss "Policies within the Police Department and Accountability."

77.     Instead, unknown to Kanapesky, he was placed on the Agenda of the April 18, 2024, Meeting of the Board of Supervisors.  The scheduling sleight of hand was specifically

calculated by EBT to inflict a continuing prior restraint, and censorship, of Kanapesky's First Amendment protected rights, and on an ongoing basis seek to prevent him from petitioning the government for redress of his grievances.  A true and correct copy of the April 19, 2024, and May 10, 2024, Emails in that regard are attached hereto and incorporated herein, as Exhibit "S" Pages 223.

78.     At the April 18, 2024, Meeting of the Board of Supervisors, Kanapesky's failure to appear was noted.  At that Meeting, a Supervisor openly mocked Kanapesky's loss of his dog, as a result of a still unexplained accident on State Route 282, calling the Board of Supervisors Police Liaison, Kyle Scribner, a "lucky dog."

79.     The existence of the two-tiered system for Kanapesky was again confirmed in letter and the email exchanges between the Township Solicitor, and Kanapesky's legal counsel from May 6, 2024, through May 9, 2024.  A true and correct copy of the May 6, 2023, letter is attached hereto and incorporated herein, as Exhibit "T" Pages 224-227, and a true and correct copy of a May 9, 2024, Email is attached hereto and incorporated herein, as Exhibit "U" Pages 228-229.

80.     As a result of the two-tiered system, Kanapesky incurred attorney's fees in providing a July 16, 2024, letter to the Township Solicitor concerning a current life-safety matter about a Giant Poplar tree that was undermined in the HDD operations conducted at Kanapesky's Property.  No response was received from the Township as to the July 16, 2024, correspondence. A true and correct copy of the July 16, 2024, letter is attached hereto and incorporated herein, as Exhibit "V" Pages 230-231.

81.     As a result of the two-tiered system, Kanapesky incurred attorney's fees coordinating a police report on August 26, 2024, with the EBT Police concerning an identity theft matter.  A true and correct copy of an August 28, 2024, Email is attached hereto and incorporated herein, as Exhibit "W" Pages 232-233.

82.     On or about October 19, 2024, there was an auto accident at the "Dead Man's Curve" on State Route 282 at the front of Kanapesky's Property.  The driver of the auto exited

the vehicle and pounded on Kanapesky's mailbox. The driver admitted to the responding EBT Police Officer that he pounded on, and damaged Kanapesky's mailbox. Despite the admission from the driver, heard by the responding EBT Police Officer, and recorded on the officer's body camera, no charges were filed against the driver.

83.    Finally, on November 20, 2024, the two-tiered system for Kanapesky, and the emboldened EBT Police Department activities reached a dangerous juncture. While driving on State Route 322 to a client jobsite on Wythe Drive, East Brandywine Township, Pennsylvania, Kanapesky was placed in fear of imminent harm when an EBT Police vehicle passed Kanapesky's work vehicle from the right lane, and then abruptly cut in front of Kanapesky's vehicle that was traveling in the left lane.

84.    Now trailing the EBT Police vehicle, Kanapesky's vehicle then proceeded to turn left from State Route 322 onto Gloucester Drive to reach the client's jobsite on Wythe Drive. While Kanapesky's vehicle traveled at or before the posted speed limit of twenty-five (25) miles per hour on Gloucester Drive, the EBT Police vehicle from State Route 322 turned left onto a longer, parallel street, Raleigh Drive. Upon information and belief, the EBT Police vehicle traveled at a rate of speed greatly in excess of the twenty-five (25) miles per hour posted speed limit on Raleigh Drive in order to make a left turn, and then confront Kanapesky's vehicle on Wythe Drive, wholly within East Brandywine Township. The East Brandywine Township-West Brandywine Township boundary occurs within a part of Wythe Drive.

85.    As the confrontation unfolded, the EBT Police Officer refused to identify himself, and the circumstances of the confrontation left Kanapesky fearing for his life-safety during the entire time. Ultimately, the EBT Police Officer drove away in the EBT Police vehicle.

86.    Kanapesky and his legal counsel then expeditiously reported the confrontation, in person, at the East Brandywine Police Department offices. A true and correct copy of the **redacted** November 20, 2024, Incident Report is attached hereto and incorporated herein, as Exhibit "X" Pages 234-239.

87.    A redacted copy of the November 20, 2024, Incident Report is attached hereto and incorporated herein, as Exhibit "X" Pages 234-239 because once again, the EBT Police

20

Department published Kanapesky's social security number. In addition, the listed phone number for Kanapesky within the Incident Report is not his known number. Rather, the listed number connects to a Walmart Gift Cards contact center.

88.    Also, at night on November 20, 2024, after Kanapesky finished work at his customer's job on Wythe Drive, he exited Wythe Drive towards Raleigh Drive, at the portion of those streets that are wholly within West Brandywine Township. Kanapesky parked his vehicle to ensure all equipment was secured. While parked, he was confronted by a gray, unmarked, EBT Police vehicle, who parked behind Kanapesky, and remained parked behind him for an unusual length of time. Once again, Kanapesky feared for his life-safety during the entire time of this encounter. Ultimately, the EBT Police Officer drove away in the gray, unmarked, EBT Police vehicle.

89.    On January 23, 2023, Kanapesky received a letter from the Pennsylvania Office of Attorney General informing him that a professional geologist would review his Property under the Homeowner Well Water Supply Grievance Program Related to the Mariner East Pipeline Construction Project. A true and correct redacted copy of the January 23, 2023, letter is attached hereto and incorporated herein, as Exhibit "Y" Pages 240.

90.    Water testing was performed by representatives of the Pennsylvania Office of the Attorney General, and in November of 2024, Kanapesky received test results that confirm the presence of at least three (3) substances in his well-water, which are known to be hazardous.

91.    On a daily basis, Kanapesky is now in abject fear that EBT will further retaliate against him, attempt to further inflict a continuing prior restraint, and censorship, of his First Amendment protected rights, and on an ongoing basis seek to prevent him from petitioning the government for redress of his grievances, as it pertains to the well-water test results received in November of 2024.

21

**CAUSES OF ACTION**
**COUNT I**
**(Retaliation against Kanapesky in Violation of his Rights Under the First Amendment)**

92.     All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

93.     At all times relevant hereto each of the Defendants were duly elected, appointed, or employed by the Township of East Brandywine and with respect to all of the actions, decisions, and conduct attributed to them as alleged herein, at Paragraphs 1-91 they were acting under color of state law and in the scope and course of their duties.

94.     At all times relevant hereto it is alleged that Kanapesky's public statements, correspondence and conversations with third parties, emails sent to EBT, postings on the social media, and Right-to-Know requests to the Township, and his inquiries into the matters alleged at Paragraphs 1-91 of this Complaint were all constitutionally protected speech and conduct for which Kanapesky's right to engage are established under the First Amendment to the U.S. Constitution as well as the Pennsylvania Constitution.

95.     The actions and conduct of each of the Defendants, as alleged at Paragraphs 1-91, which were directed at or involved Kanapesky, were undertaken without any justification, merit, reasonable basis, or support in fact or law, and were undertaken intentionally, knowingly, and maliciously, in retaliation for Kanapesky's aforesaid protected speech, for the purpose of causing Kanapesky financial harm, humiliation, emotional distress, interference with his business and personal affairs, and to punish and deter him from continuing to exercise his First Amendment right to speak out about, criticize, investigate, and report on matters of public concern regarding the conduct of the Defendants.

96.     As a result of the conduct of the Defendants, Kanapesky's business suffered, he experienced humiliation and diminished standing in the community based upon the false claims made against him, he lost significant time from work and his activities of daily living because of

the time it took for him to respond to the Defendants' misconduct, which ultimately required that Kanapesky incur the expense to hire an attorney in order to protect and vindicate his constitutional rights.

97.     Kanapesky is entitled to seek redress from the Defendants for their aforesaid violations of his constitutional rights pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

## COUNT II
### (Violation of Kanapesky's Fourteenth Amendment Right to Equal Protection of the Laws)
### (Class of One)

98.     All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

99.     The Fourteenth Amendment dictates that a state may not "deny to any person within its jurisdiction the equal protection of the laws.

100.    The Defendants were obligated under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution to treat Kanapesky in the same fashion and subject to the same rules and government action as every other citizen within their jurisdiction and not impose rules or take action against him that subjected him to intentional and arbitrary discrimination, whether in their interpretation of the laws applicable to him and the actions for which they were empowered to act or by their improper execution of those laws.

101.    Defendants undertook to punish and retaliate against the Plaintiff for the matters alleged at Paragraphs 1-91 of this Complaint, by intentionally disregarding the laws applicable to

each matter, and instead choosing to harass Kanapesky, as alleged at Paragraphs 1-91 of this Complaint, which constituted the intentional, arbitrary and wholly irrational discrimination of Kanapesky, as a class of one (1) based upon his individual, lawful, and protected actions, and not as it treated otherwise similarly situated persons, because of his exercise of his protected right to free speech, all of which violated Kanapesky's established rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

### COUNT III
### (Violation of Kanapesky's Fourteenth Amendment Right to Equal Protection of the Laws)
### (Selective Enforcement)

102. All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

103. The Defendants knowingly and intentionally chose to selectively enforce the trespass laws against Kanapesky for the sole purpose of punishing and interfering with Kanapesky's attempts to seek governmental redress for his grievances, as alleged at Paragraphs 1-91 of this Complaint, as opposed trespassers present at Kanapesky's Property, all of which violated Kanapesky's established rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

**COUNT IV**
**(Violation of Kanapesky's Right to Due Process)**
**(Takings Clause-Property Interests)**

104.    All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

105.    At all times relevant hereto Kanapesky had a protected property interest in both the real and personal property in which he had a recognized right to the free use and enjoyment of, in the absence of any lawful obligation or recognized debt, which right was protected from interference or infringement by the state without first being afforded due process of law.

106.    As alleged at Paragraphs 1-91, of Kanapesky's Complaint, the Defendants knowingly and intentionally misused the law and failed to adhere to the provisions intended to protect Kanapesky's right to due process.

107.    As alleged at Paragraphs 1-91, of Kanapesky's Complaint, the process by which environmental regulations were intended to be enforced was undermined and misused to enable legal proceedings to be leveraged against Kanapesky, which violated his right to due process.

108.    As a result of the foregoing conduct of Defendants, Kanapesky was obligated to respond to false statements issued against him and to undertake to defend himself against conduct for which he had no liability.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

## COUNT V
### (Violation of Plaintiff's Right to Substantive Due Process)

109.    All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

110.    Kanapesky holds a fundamental Constitutional right to property, both real and personal, protected by the 14th amendment's concept of substantive due process, which cannot be infringed by government action that is "arbitrary, irrational, or tainted by improper motive..." or by means of government conduct so egregious that its shocks the conscience.

111.    The conduct of the Defendants, as alleged at Paragraphs 1-91 of Kanapesky's Complaint was undertaken knowingly, deliberately, over a substantial period of time, within which, it had sufficient time to reconsider the course of action that it had repeatedly chosen to initiate and maintain, that was intended to inflict the greatest monetary damage possible on Kanapesky, and thereafter was unjustifiable by any legitimate government interest, and as such meets and surpasses the type of official action that is considered to reach and exceed the required conscience-shocking level.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

## COUNT VI
### (Civil Conspiracy to Violate Kanapesky's Constitutional Rights and Rights Under State Law)

112.    All preceding averments of Kanapesky's Complaint are incorporated herein and made a part hereof by this reference.

113.    Each of the individual named Defendants, and other unnamed members of the East Brandywine Township Board of Supervisors, sufficient in number to represent a majority of that Board. the former Township Manager, as well as the East Brandywine Township Police Department, entered into agreements with one another to willfully and wantonly engage in the course of the conduct, actions, and proceedings set forth herein, that they desired and intended to accomplish the agreed upon result and purpose, and each  of the Defendants undertook one or more acts of clearly unreasonable character, knowing and intending the results set forth herein, consciously indifferent to the consequences to Kanapesky, and the citizens for whose interests they were charged to act faithfully and lawfully, and agreed and did undertake whatever action was necessary on their part to participate, authorize, or ratify the acts of any other Defendants necessary to accomplished the agreed upon objectives, each acting under color of state law and within the scope of their official duties, to engage in the government action intended to silence Kanapesky and prevent him from making any further credible claims against them in his speech and conduct and to discourage him from any further inquiry into their conduct, and each of them engaged in at least one act, even if simply the ratification of the acts of others, to achieve the agreed upon purpose, knowing that they were intentionally misusing their authority as state actors to deprive Kanapesky of his established constitutional rights while acting under color of state law.

WHEREFORE, Plaintiff, Matthew Kanapesky respectfully requests that judgment be entered against all the Defendants in an amount exceeding One Hundred and Fifty Thousand Dollars ($150,000.00), along with punitive damages, reasonable attorneys' fees and costs, injunctive relief to be fashioned by the Court to prevent such occurrences in the future, and such other legal and equitable relief as appears just and reasonable.

<u>**PRAYER FOR RELIEF UNDER ALL COUNTS**</u>

Plaintiffs requests a jury trial on all issues and an award of:

    a.      Compensatory Damages

    b.      Punitive Damages

27

c.      Reasonable Attorneys' Fees and Costs; and

d.      Such other legal or equitable relief that appears just and reasonable.


## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury in this action of all issues so triable.


                                                LAW OFFICE OF JOHN H. KIEFEL


Date:   December 6, 2024                 BY:    _____
                                                JOHN H. KIEFEL
                                                721 East Lancaster Avenue
                                                Downingtown, PA 19335
                                                ID # 53185
                                                (610) 873-4140
                                                Attorney for
                                                Plaintiff, Matthew Kanapesky