IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Matthew Kanapesky,<br><br>   *Plaintiff,*<br><br> v.<br><br>Township of East Brandywine, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 24-6520 |

**Pappert, J.**                                July 23, 2025

### MEMORANDUM

  Matthew Kanapesky sued the Township of East Brandywine, alleging that (1) the Township violated his First Amendment and equal protection rights by causing police officers to harass him and prosecute him for theft, and (2) the theft prosecution constituted an abuse of process under Pennsylvania law. The Township moves to dismiss for failure to state a claim, and the Court grants the motion because Kanapesky has not alleged any basis for *Monell* liability. The Court also declines to exercise supplemental jurisdiction over the abuse-of-process claim and will not permit Kanapesky to further amend his Complaint.

I

  Kanapesky filed this suit in December 2024, alleging various violations of his constitutional rights by the Township and its employees dating as far back as 2019. *See generally* (Compl., ECF No. 1); (Am Compl., ECF No. 12.) Kanapesky has now largely abandoned his original claims. The current iteration of his Complaint names only the Township as a defendant and seeks recovery only for alleged rights violations that

1

occurred *after* the initial complaint was filed. (Second Am. Compl. ¶¶ 5, 86, 114, 121, ECF No. 23.)

Specifically, Kanapesky's Complaint now focuses on a series of interactions he had with Township police in April of 2025. On April 15, Kanapesky "observed a fisherman trespassing" on his land. (*Id.* ¶ 35.) The alleged trespasser was fishing in the Brandywine Creek, part of which Kanapesky says he owns. (¶¶ 18–19, 36.) Kanapesky instructed the fisherman to leave, but the fisherman refused and became angry, so Kanapesky called 911. (*Id.* ¶¶ 41, 43–44.) At some point, Kanapesky also "placed [the fisherman's tacklebox] inside a trashcan." (*Id.* ¶ 53.)

Township Police Officer Christopher Fox responded to the 911 call. (*Id.* ¶ 46.) The first thing Officer Fox did when he arrived was argue with Kanapesky about some of the allegations contained in the First Amended Complaint in this action. (*Id.* ¶¶ 46–49.) Only after the argument did Fox speak with the trespasser, who apparently "admitted to everything." (*Id.* ¶ 52.) Officer Fox "t[ook] no action against the trespasser," except to tell him that he was "not getting [his] [tackle]box back." (*Id.* ¶¶ 53–54.) Kanapesky asked Fox why the trespasser couldn't have his tacklebox back and Fox responded by "yell[ing]" at Kanapesky, "dismiss[ing] his concerns" and stating "that the matter was closed." (*Id.* ¶ 54.)

That evening, however, Fox returned to Kanapesky's house with Officers Brendan Flood and Ryan Eastman and demanded that Kanapesky return the tacklebox, or else they would charge him with theft. (*Id.* ¶¶ 57–65.) Kanapesky asked Fox why he'd changed his tune and then asked to speak to a superior officer with his

lawyer present. (*Id.* ¶ 66.) The officers ignored his questions and left without the tacklebox. (*Id.* ¶¶ 67, 77.)

The following day, Kanapesky attempted to speak with Deputy Chief Jeffrey Yankanich about the prior day's events. (*Id.* ¶ 68.) Yankanich told Kanapesky over the phone that he was busy, but Kanapesky nevertheless went to the Township police station to speak with him face-to-face. (*Id.* ¶¶ 69–70.) Yankanich was "combative" when Kanapesky arrived, and he told Kanapesky that an "affidavit of probable cause had already been submitted to the magistrate," so Kanapesky would have to take up his grievances in court. (*Id.* ¶¶ 71–72.) A couple weeks later, on May 1, Kanapesky received by mail a criminal complaint charging him with theft. (*Id.* ¶¶ 71, 73, Ex. H.) Eastman is the officer who submitted the affidavit of probable cause in support of the charges. (*Id.* ¶ 73.)

II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,

786–87 (3d Cir. 2016). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Id.* at 790. The plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of his claim. *Connelly*, 809 F.3d, at 788–89. But "[c]onclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth. *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). So "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III

#### A

Section 1983 permits individuals to sue for violations of their federal rights. 42 U.S.C. § 1983. But pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality like East Brandywine may only be held liable under § 1983 if it was the "moving force" behind the rights violation. *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978)). That is, a municipality is not vicariously liable for violations of federal rights by its employees. *Id.* at 355.

A plaintiff may satisfy the "moving force" requirement in one of two ways. First, the plaintiff can show that his injuries were proximately caused by an "unconstitutional policy or custom of the municipality." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citation omitted). A policy is "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant

subject." *Id.* at 105.  And a custom is a "course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105–06.

Second, a plaintiff may show that his injuries were caused by a "failure or inadequacy by the municipality" that amounts to "deliberate indifference to the constitutional rights of those affected." *Id.* at 105–06.  A plaintiff taking the deliberate-indifference route must show that municipal policymakers were on notice that their failure to act would result in frequent rights violations and yet failed to act anyway.  *Id.* at 106; *Hightower*, 130 F.4th at 357.  Typically, a plaintiff proves notice by showing "[a] pattern of similar constitutional violations" to the one alleged by the plaintiff.  *Hightower*, 130 F.4th at 357 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  In the rare case, a plaintiff may show that the risk created by the municipality's failure or inadequacy is "patently obvious" even absent a pattern of rights violations.  *Id.* (quoting *Connick*, 563 U.S. at 64).

### B

Kanapesky asserts both First Amendment retaliation and "class of one" equal protection claims.  The retaliatory conduct he alleges is (1) Officer Fox's demand that Kanapesky return the trespassing fisherman's tacklebox, despite telling the trespasser "you're not getting [it] back," (2) Deputy Chief Yankanich's "combative" attitude and refusal to discuss Officer Fox's actions, and (3) Officer Eastman's submission of an Affidavit of Probable Cause supporting the criminal complaint against Kanapesky for theft.  *See* (Second Am. Compl. ¶ 78.)  Kanapesky says the officers were retaliating against him for filing this lawsuit and for his prior complaints to the Township about contaminated water infiltrating his land from a nearby housing development.  (*Id.*)  He

also says the officers' conduct violated his equal protection rights because he's the only person who's been retaliated against even though numerous East Brandywine residents have also complained about contaminated water infiltrating their land. (Second Am. Compl. ¶¶ 120–22.) The Court need not consider whether these allegations could show violations of Kanapesky's First Amendment or equal protection rights because, even if they do, there is no plausible basis for *Monell* liability.

First, none of the individuals responsible for the alleged conduct — Officers Fox, Flood and Eastman and Deputy Chief Yankanich — possess "final and unreviewable authority" to make policy for the Township. *See* (Second Am. Compl. ¶¶ 6–8.) So their actions alone cannot bind the Township. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245–46 (3d Cir. 2006).

Second, Kanapesky hasn't plausibly alleged that any Township policy or custom both proximately caused his injuries and violated either the First Amendment or Equal Protection Clause. He relies most heavily on the Township's alleged "policy, custom and practice that the Brandywine Creek is a navigable waterway." (Second Am. Compl. ¶¶ 94, 97–101); (Resp. 18–20, 20 n.3, ECF No. 27-1.)[1] But he makes no attempt to explain how that policy is unconstitutional. He does not allege, for example, that the Township started treating the creek as navigable soon after Kanapesky engaged in First Amendment-protected conduct, or that the Township treats the creek as non-navigable where it intersects with property owned by other East Brandywine residents. *See* (Second Am. Compl. ¶¶ 75–76, 95–96.) He also makes no attempt to explain how

---

[1] His contention seems to be that the creek is actually non-navigable, that he therefore owns some of the land underneath it, and that the Township should therefore be prosecuting as trespassers the people who fish that part of the creek. (Am. Compl. ¶¶ 18–19.)

the Township's designation of the creek as navigable proximately caused the alleged harassment by police or theft charge.  *See* (Resp. ¶¶ 17–20.)

The only other Township policies Kanapesky cites are three police directives — one providing the Chief of Police with authority over the force's "day-to-day functioning," one providing that the first officer at any scene "shall take charge until properly relieved," and one providing that "[o]fficers shall obey all . . . laws."  (Second Am. Compl. ¶¶ 9–10.)  Again, Kanapesky makes no attempt to explain how these could be unconstitutional or the proximate cause of his alleged rights violations.  *See* (Resp. ¶¶ 17–20.)

Third, the Complaint contains no allegations showing that any Township policymaker was deliberately indifferent to Kanapesky's First Amendment or equal protection rights.  Kanapesky merely alleges that the Township's Board of Supervisors failed to "train," "monitor[]," "supervise[]" and "discipline" its police officers.  (Second Am. Compl. ¶¶ 94, 96.)  The Court is left to guess what kind of training, monitoring, supervision or oversight Kanapesky believes would have prevented his injuries.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (explaining that a failure or inadequacy will only create municipal liability when it's "closely related to the ultimate injury" and the "injury [would] have been avoided" absent the deficiency).  The Court also has no reasonable basis to infer notice, as the Complaint contains no allegations showing a pattern of First Amendment retaliation or equal protection violations by Township employees,[2] nor any allegations that could show a "patently obvious" risk of such violations.

---

[2]      The only pattern of conduct set out anywhere in the Complaint is an alleged "recent history of trespassing issues at Kanapesky's property."  (Second Am. Compl. ¶ 97.)  Kanapasky says the

IV

Kanapesky's final claim is for abuse of process under Pennsylvania law. The Court does not have original jurisdiction over this claim. *See* (Second Am. Compl. ¶¶ 1–5.) And having "dismissed all claims over which it has original jurisdiction," the Court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c). The Court will so decline, as the parties have set out no "extraordinary circumstances" that would warrant exercising supplemental jurisdiction here. *See Greco v. Senchak*, 627 F. App'x 146, 151 (3d Cir. 2015) (quoting *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984)).

V

Kanapesky requested that, in the event of dismissal, the Court grant him leave to amend so that he may have a fourth attempt at stating viable claims against the Township. (Resp. 25.) Rule 15(a) instructs courts to give leave to amend "when justice so requires," so courts grant leave unless equitable considerations counsel against doing so. For example, a court "may deny leave on a finding of undue delay, bad faith, prejudice to the opposing party, or futility," *Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013), or where a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts should also be careful not to reward a "wait-and-see" approach to pleading, whereby a plaintiff allows the court to identify the flaws in his complaint before filling in the gaps. *Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013).

---

police failed to satisfactorily resolve two of those issues, (*id.* ¶¶ 98–100), but he alleges no facts suggesting that the unsatisfactory resolutions amounted to constitutional violations.

Here, the interests of justice counsel against giving Kanapesky a fourth bite at the apple. The first two versions of his complaint each listed six counts and four defendants, included over 200 pages of exhibits, and recounted what appeared to be every problem he's had with the Township or its employees in the last decade. The Defendants moved to dismiss both and filed extensive briefing identifying the deficiencies they perceived. The Court held argument on the second motion to dismiss and, in granting it, explained why the First Amended Complaint was deficient. *See* (ECF Nos. 21 & 22.) Kanapasky and his lawyer have thus had plenty of opportunity to scrutinize their factual allegations and the governing legal standards and put together a viable Second Amended Complaint. The Township should not have to endure the costs of another round of amendment and briefing simply because Kanapesky did not take advantage of his prior opportunities.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.